**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

**2014 MSPB 58**

Docket No. PH-0752-13-5622-I-1[1]

**Edward Antonio Kelly,**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

July 24, 2014

Edward Antonio Kelly, Laurel, Maryland, pro se.

Kathleen L. Kadlec, Baltimore, Maryland, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant petitions for review of an initial decision that affirmed the agency's furlough action.  For the following reasons, we conclude that the petitioner has not established a basis under 5 C.F.R. § 1201.115 for granting the

---

[1] Pursuant to 5 C.F.R. § 1201.36(a), this appeal was part of a consolidation, *ACE Balt Pro Se No Hearing v. Department of the Army*, MSPB Docket No. PH-0752-13-5926-I-1.  The designation "ACE Balt Pro Se No Hearing" refers to employees from the U.S. Army Corps of Engineers, Baltimore District, who filed furlough appeals pro se and did not request a hearing.

petition for review. We therefore DENY the petition for review and AFFIRM AS MODIFIED by this Opinion and Order the initial decision's analysis regarding the merits of the furlough and the appellant's due process allegation, still affirming the agency's furlough action.

## BACKGROUND

¶2    By memorandum dated June 3, 2013, the agency informed the appellant, a GS-12 Engineering Technician, that the U.S. Army Corps of Engineers (USACE), Baltimore District proposed to furlough him for no more than 11 workdays due to the "extraordinary and serious budgetary challenges facing the Department of Defense (DoD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013." Initial Appeal File (IAF), Tab 1 at 1, 9, 11.[2] The agency notified the appellant that the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012, made across-the-board reductions to budgetary resources for the federal government, that DoD must and will protect wartime operations funding for its troops in harm's way, that "[t]his inevitably means larger cuts in base-budget funding for the Operation and Maintenance (O&M) accounts," and that DoD "will need funding in other accounts that can be used to provide the warfighters with what they need to protect national security and fight the war." *Id*. at 9. The agency afforded the appellant an opportunity to respond orally and/or in writing to the proposal, to review the supporting material, and to furnish affidavits or supporting documentary evidence in his answer. *Id*. at 10.

---

[2] Under the Balanced Budget and Emergency Deficit Control Act, as amended, *see* 2 U.S.C. § 901a(5)(A), Congress required the Office of Management and Budget to calculate and the President to order a "sequestration" on March 1, 2013, for FY 2013 that would reduce each spending account within certain security and nonsecurity categories by a uniform percentage to achieve certain reduction goals. *See Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 4 (2013).

¶3      In a June 27, 2013 memorandum, the agency's deciding official determined that the reasons for the proposed furlough remained valid, the procedures and conditions related to the furlough were determined to be the most equitable means of implementing the furlough, and the appellant would be required to be on a discontinuous furlough for no more than 11 workdays during the period from July 8, 2013, through September 30, 2013. *Id*. at 6. The record includes a Standard Form 50-B reflecting the appellant's furlough, effective July 11, 2013, on discontinuous days between July 11, 2013, and September 30, 2013, not to exceed a maximum of 88 hours, with the appellant's supervisor informing the appellant of the furlough dates before the beginning of each pay period. *Id*. at 11.

¶4      On appeal, the appellant asserted that: (1) although the USACE furloughed personnel based on their "military or civil" role to meet organizational budgetary goals, the USACE "could have further subdivided personnel, per the [Code of Federal Regulations], and then furloughed employees based on their tenure group, veteran[s'] preference within each group, length of service and then by performance"; (2) the USACE had no lapse in appropriations, the agency's decision to furlough him was arbitrary, and funds existed for the work he engaged in; (3) the furlough decision was made at the DoD level despite the failed efforts of the USACE, working with the Department of the Army, to request from DoD exceptions to furloughs for positions with civil funding when project specific funding was available; (4) DoD did not approve the USACE's request that DoD allow the use of accrued leave to address sequestration requirements and grant exceptions to furloughs where savings through reduced spending in other areas could be achieved; (5) the deciding official of the Baltimore District "was not able to overcome the dictate from DoD" and the Department of the Army, but simply followed the orders he was given, which means that there was no fair and impartial review under 5 U.S.C. chapter 75 because the deciding official could not make an independent judgment; (6) the agency is continuing to pay overtime to make up for the lost productivity due to employees out on furlough, thereby

undermining the purpose of the furlough, which was to reduce operating costs; (7) the number of furlough days has been inconsistently reduced throughout the federal sector, thereby contradicting the original "across the board" furlough for all federal agencies and creating an inequitable bearing of the savings costs; (8) the Baltimore District Corps of Engineers has not shown what it has done to reduce costs in an effort to capture the 5 percent savings required for FY 2013; (9) the agency's furloughs ignored the rules of tenure set forth in the Code of Federal Regulations, which would not have authorized a furlough of the appellant because he had veterans' preference and was in tenure group 1, subgroup AD; and (10) the USACE relied upon a global memorandum and other supporting documents issued by the Secretary of Defense and other senior DoD officials, rather than "materials specific to the reduction in force action," and did not perform an individualized analysis based on tenure to determine whether his furlough was necessary to promote the efficiency of the service. IAF, Tab 1 at 4-5.

¶5      The administrative judge consolidated this appeal with several other appeals. *See ACE Balt Pro Se No Hearing v. Department of the Army*, MSPB Docket No. PH-0752-13-5926-I-1, Consolidation File (CF), Tabs 1-2. Based on the written record, because the appellants did not request a hearing, the administrative judge affirmed the furlough actions. *Id.*, Tab 10, Initial Decision (ID) at 1. The administrative judge found that the maximum number of furlough days served by employees of DoD was reduced to 6 workdays. ID at 2. The administrative judge further noted that an agency may demonstrate that a furlough promotes the efficiency of the service by showing that it was a reasonable management solution to the financial restrictions placed on it and that it determined which employees to furlough in a fair and even manner. ID at 3. Here, the administrative judge held that the agency addressed in detail, with citations to the record, the factual basis for the furlough actions, including how it determined which employees would be furloughed, asserted that the furloughs

constituted a reasonable management solution to the impact of sequestration and promoted the efficiency of the service, and addressed the arguments made by the appellants on appeal. ID at 3-4. The administrative judge concluded, after reviewing the record and considering the appellants' arguments, that the agency proved by preponderant evidence the factual basis for the furloughs and that the furloughs promoted the efficiency of the service. ID at 4.

## ANALYSIS

¶6      The appellant asserts on review all of the arguments set forth above that he raised in his initial appeal. Petition for Review File, Tab 1 at 4-5. The agency has responded in opposition to the petition for review. *Id.*, Tab 5.

¶7      Under 5 C.F.R. § 351.501(a), which the appellant references on review, competing employees shall be classified on a retention register on the basis of their tenure of employment, veterans' preference, length of service, and performance in descending order. Section 351.501(a), however, must be followed when an agency releases a competing employee from his or her competitive level by furlough for more than 30 days, separation, demotion, or reassignment requiring displacement when the release is required because of, among other things, a shortage of funds. *See* 5 C.F.R. § 351.201(a)(2). Thus, the agency was not required to have subdivided personnel and furloughed employees based on their tenure group, veterans' preference within each group, length of service, and performance because there was no release of the appellant from his competitive level by furlough for more than 30 days. *See Clerman v. Interstate Commerce Commission*, 35 M.S.P.R. 190, 192 (1987) (although an employee can be subjected to a sustainable short-term furlough as an adverse action under 5 U.S.C. § 7512 if the agency establishes that the furlough promoted the efficiency of the service, the employee cannot be subjected to a sustainable long-term furlough under Part 351's reduction in force procedures unless the agency establishes that

it is also releasing all competing employees who are in a lower tenure group or who have a later service computation date).

¶8        The appellant makes a bare allegation on review that the USACE had no lapse in appropriations, the decision to furlough him was arbitrary, and funds existed for the type of work he performed.  The appellant has shown no error, however, in the administrative judge's finding that the agency proved by preponderant evidence the "factual basis" for the furloughs.  ID at 3-4.  These findings by the administrative judge are supported by evidence in the record. *See, e.g.*, CF, Tab 9 at 15-25 (Declaration of Robert F. Hale), 28-34 (Declaration of Col. Luis B. Crespo), 368-70 (Declaration of Col. Joseph R. Jordan). Moreover, any failure on the part of the USACE to obtain additional furlough exemptions[3] or DoD's approval of the use of accrued leave to address sequestration requirements does not establish that the agency's action either was an unreasonable management solution to the financial restrictions placed on it or that the agency failed to apply its determination as to which employees to furlough in a fair and even manner.  *See Chandler*, 120 M.S.P.R. 163, ¶ 8.

¶9        We further disagree with the appellant's assertion that the deciding official simply followed the orders he was given and could not make an independent judgment.  The deciding official provided a declaration made under penalty of perjury indicating that, after a careful review of each individual's submission, review of the agency's documents relied upon in issuing the proposal notice, any supporting documents submitted by the appellants, and the reply official's recommendation, he made "an individual determination if the proposed action stated any basis for an exemption, and issued a decision specifying the basis for

---

[3] DoD established nine categorical exceptions to furloughs of civilian workers, including an exception for employees who are not paid directly by accounts included in the DoD-Military budget, but who are funded instead by, for example, civil works programs.  CF, Tab 7 at 30-31, 130-31.

my determination." CF, Tab 9 at 368-69. The deciding official indicated that he had "authority to individually exempt an employee if they [sic] met an exemption." *Id*. at 369. Under these circumstances, we find that the agency's procedures satisfied the requirements of due process in this case. *See Gajdos v. Department of the Army*, 2014 MSPB 55, ¶¶ 18-25.

¶10        Regarding the appellant's overtime allegations, guidance from the Office of the Secretary of Defense provides that under no circumstances may overtime be used to offset furloughs and that there can be no overtime on furlough days unless furlough relief has already been provided. CF, Tab 7 at 836. During periods when furloughs are in effect, overtime should be strictly limited and should not appear to be an attempt to offset furloughs. *Id*. Any command that approves overtime must have adequate funds to pay for the overtime, even after furlough savings are used for readiness activities within the command or withdrawn through reprogramming for use by other commands. *Id*. at 836-37. Subject to these limits, limited overtime may be authorized to meet mission-critical needs, and the appropriate deciding official must personally review overtime requests to ensure that they are required to meet mission-critical needs. *Id*. at 837.

¶11        A March 20, 2013 memorandum issued by the Office of the Assistant Secretary of the Department of the Army provides that "[e]mployee overtime work . . . will be prohibited during [the] sequester through the end of this FY, except as necessary to protect the health, safety and security of personnel or property; to ensure the direct and timely provision of services and material to deployed units or to units that are preparing to deploy; or to perform similar mission critical functions." *Id*. at 355, 358. During the furlough, commanders may approve overtime that meets the above criteria, and any such approval must be documented in writing in advance of the time and date on which the work is to be performed, signed and dated by the approval authority, and set forth the purpose of the overtime work and the rationale for concluding that the work meets the criteria set forth above. *Id*. at 359.

¶12　　　　An agency's decision to award certain employees overtime pay may be relevant to whether the agency applied the furlough uniformly and consistently. *Chandler*, [120 M.S.P.R. 163](), ¶ 14.　Thus, if the agency used overtime payments to relieve certain employees but not others of the financial consequences of the furlough, this may be sufficient to show that the furlough did not meet the efficiency of the service standard.　*Id.*　The efficiency of the service standard ultimately encompasses issues relating to the uniform and consistent application of the furlough, including whether the agency used a furlough to target employees for personal reasons or attempted to exempt certain employees from the furlough without legitimate management reasons.　*Id.*, ¶ 9.　The agency must treat similar employees similarly and must justify any deviations with legitimate management reasons.　*Id.*, ¶ 8.

¶13　　　　Here, the appellant alleged that "the Agency is continuing to pay overtime to make up for the lost productivity due to employees out on furlough thereby undermining the purpose of an administrative furlough, which is to reduce operating cost.　This action is in direct violation of the administrative furlough policy and procedure mandating cancellation of all overtime, unnecessary travel and implementing other cost saving measures."　IAF, Tab 1 at 4.　To the extent that the appellant is alleging that the agency's policy mandated the cancellation of all overtime, the evidence set forth above demonstrates that this assertion is incorrect.　Moreover, we find that the agency's decision to adopt a policy under which it permitted the use of overtime to meet mission-critical needs is a spending matter within the agency's sound discretion.　*See Chandler*, [120 M.S.P.R. 163](), ¶ 14 (the agency's alleged decision to award certain employees overtime "may be characterized as a spending decision as well").　Although the manner in which the agency implemented that overtime policy may be relevant to whether the agency applied the furlough uniformly and consistently, *see id.*, the appellant has not alleged in this case that the agency applied its overtime policy during the furlough in a manner that was not uniform and consistent.

¶14    The appellant's contention that the number of furlough days has been inconsistently reduced throughout the federal sector, thereby contradicting the original "across the board" furlough for all federal agencies, is unavailing. The Board has jurisdiction over an appealable action taken by an "agency." *See* 5 U.S.C. §§ 7513(a), (d), 7701(a). Here, the furlough action was taken by the USACE. Thus, the issue is whether that particular agency proved that the furlough promoted the efficiency of the service by showing that the action was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner, *see Chandler*, 120 M.S.P.R. 163, ¶ 8, not whether the government as a whole met that requirement. The appellant's assertion that the Baltimore District Corps of Engineers has not shown what it has done to reduce costs in an effort to capture the 5 percent savings required for FY 2013 is essentially a challenge to the spending decisions of the agency, which are within the agency's sound discretion. *See id.*, ¶ 9.

¶15    Finally, the appellant asserts that the USACE relied upon a global memorandum and other supporting documents issued by the Secretary of Defense and other senior DoD officials, rather than "materials specific to the reduction in force action," and did not perform an individualized analysis based on tenure to determine whether his furlough was necessary to promote the efficiency of the service. Under 5 U.S.C. § 7701(c)(1)(B), an action, such as the furlough in this case, shall be sustained only if the agency's decision is supported by a preponderance of the evidence. The Board has held that an agency meets the efficiency of the service standard at 5 U.S.C. § 7513(a) by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a fair and even manner. *See Chandler*, 120 M.S.P.R. 163, ¶¶ 5, 8. The appellant has not identified any statute, regulation, or case law that requires the agency to prove its case before the Board without relying upon

evidence from the Secretary of Defense or DoD officials, especially given that the Department of the Army, though separately administered by the Secretary of the Army, is under the direction, authority, and control of the Secretary of Defense. *See White v. Department of the Army*, 115 M.S.P.R. 664, ¶ 7 (2011). As set forth above, *see supra* ¶ 7, the appellant's tenure plays no role in determining whether the furlough at issue in this case promoted the efficiency of the service.

¶16        Accordingly, the agency's furlough action in this case is AFFIRMED.

## ORDER

¶17        This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court.  The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.